UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **THE ESTATE OF JESSE CLARENCE BROWN, SR.** | * | **CIVIL ACTION NO. 17-1486** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **NEW YORK LIFE INSURANCE COMPANY, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions: 1) a motion to remand filed by plaintiffs, the heirs of the estate of Jesse Clarence Brown, Sr.; and 2) a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 10] filed by defendant, Jim Donelon, in his capacity as Commissioner of Insurance. The motions are opposed. For reasons assigned below, it is recommended that both motions be denied, and that plaintiffs' claims against Jim Donelon, in his capacity as Commissioner of Insurance, be dismissed, without prejudice, for lack of subject matter jurisdiction.

### Background

On October 6, 2017, the heirs of the Estate of Jesse Clarence Brown, Sr.: Jesse Clarence Brown, Jr.; Rene Felippe Brown; Delicia Carrie Marshall; and Danna Derrell Brown, filed the instant petition for damages for breach of contract, fraud, and for unfair and deceptive insurance practices in the 6th Judicial District Court for the Parish of Tensas, State of Louisiana, against defendants, New York Life Insurance Company ("NYLife") and Jim Donelon, in his capacity as Commissioner of Insurance. (Petition). Plaintiffs allege that their now-deceased father Jesse Clarence Brown, Sr., had life insurance polices with NYLife, but that NYLife failed to pay sums

due under the policies within 60 days after March 15, 2017, – the date that plaintiffs notified NYLife of their father's October 6, 2016, passing. *Id.*, ¶¶ I, V-VIII. Plaintiffs further allege that Jim Donelon, in his capacity as Commissioner of Insurance, was aware of certain actions by NYLife that formed the basis of a putative class action on behalf of policy holders who purchased life insurance polices from NYLife between 1982 through 1994. *See Banks v. New York Life Ins. Co.*, 737 So.2d 1275, 1278 (La. 1999); Petition, ¶¶ XIII-XVII. Plaintiffs contend that they each are entitled to damages in an amount in excess of $328,954, plus penalties, and attorney's fees. (Petition, ¶ XII).

On November 13, 2017, NYLife removed the suit to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). NYLife is a mutual insurance company *incorporated* under the laws of New York, with its principal place of business in said state. *See* 1st Amend. Notice of Removal, ¶ 6.[1] Plaintiffs are citizens of Louisiana or Texas.

---

[1] On February 20, 2018, the court reviewed the original notice of removal, and observed that NYLife asserted that it was a "mutual insurance with its principal place of business in the State of New York," but otherwise failed to specify whether it was a corporation, a limited liability company, or some other type of unincorporated association. (Feb. 20, 2018, Order [doc. # 22]). Accordingly, the court directed NYLife to amend its notice of removal to address this omission. *Id*.

On February 27, 2018, NYLife amended its notice of removal to reassert that it was a mutual insurance company, but added that it was organized under the laws of the State of New York. (1st Amend. Notice of Removal). NYLife further explained that federal courts consistently treat it as "tantamount to a New York corporation." *Id*.

Courts *do* treat mutual insurance companies as corporations for purposes of the diversity statute – at least where the law of the state where the mutual insurance company is organized so provides. *See Pastor v. State Farm Mut. Auto. Ins. Co*, 487 F.3d 1042, 1048 (7th Cir.2007); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, Ltd. Liab. Corp.*, 757 F.3d 481, 483 (5th Cir.2014) (citing *Pastor* with approval); *Thorne v. State Farm Mut. Auto. Ins. Co.*, No. 14-827, 2015 WL 809530, at *3 (M.D. Fla. Feb. 25, 2015) (citing 16 COUCH ON INSURANCE, § 229:22).

New York law contemplates that mutual insurance companies are corporations. N.Y. Ins. Law § 1211 (McKinney); *see also Fid. & Cas. Co. of New York v. Metro. Life Ins. Co.*, 42 Misc.2d 616, 617, 248 N.Y.S.2d 559, 561 (Sup. Ct.1963) (mutual insurance company was *incorporated* under the laws of this state); *Klonick v. Equitable Life Assur. Soc. of U. S.*, 77

(Petition, Preamble). Moreover, Jim Donelon, in his capacity as Commissioner of Insurance, is considered, for purposes of diversity, either a citizen of Louisiana, or not a citizen at all.[2] To overcome the patent lack of complete diversity and obstacle to removal presented by the inclusion of the Commissioner of Insurance as a defendant in the suit, NYLife argued in its removal notice that plaintiffs have no reasonable possibility of recovery against the Commissioner, and therefore, he was improperly joined in an effort to defeat diversity and removal jurisdiction.

Plaintiffs disagree with NYLife's assessment of their claims against the Commissioner, and on December 5, 2017, filed the instant motion to remand for lack of subject matter jurisdiction because of the presence of the non-diverse/diversity-destroying defendant.[3] Plaintiffs also argued that defendants waived their right to remove the matter to federal court because of their pre-removal activities in state court. In addition, plaintiffs asserted that their suit is a probate matter, and therefore, the federal court may not exercise its jurisdiction.

NYLife filed its opposition to the motion to remand on December 21, 2017. [doc. # 7].

---

Misc.2d 246, 248, 353 N.Y.S.2d 372, 375 (Sup. Ct.1974) (policyholder in a mutual company is a member of the *corporation*).

[2] A suit against a public officer in his official capacity is a treated as one against the entity. *Williams v. Morgan*, 710 F. Supp. 1080, 1082 (S.D. Miss.1989) (citation omitted). If the entity is an arm of the state or alter ego of the state, then it is not considered a citizen for purposes of diversity. *Id*. (citation omitted).

[3] In their brief, plaintiffs also invoked the procedural bar against removal of a diversity suit that includes a forum-domiciled defendant. 28 U.S.C. § 1441(b)(2). However, as with a non-diverse defendant, the foregoing procedural defect in the removal process (to the extent that Jim Donelon may be considered a Louisiana citizen) may be cured if the removing defendant establishes that the forum-domiciled defendant(s) was improperly joined. *See e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 310 (5th Cir. 2002) (applying improper joinder to support removal of a case where the parties were diverse, but a forum-domiciled defendant was present).

The next day, the Commissioner of Insurance filed his opposition to the motion to remand, together with an incorporated motion to dismiss plaintiffs' claims against him for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). On December 28, 2017, plaintiffs filed a reply brief in support of their motion to remand. [doc. # 17]. Thus, the matter is ripe.[4]

## Discussion

**I.     Motion to Dismiss Under Rule 12(b)(6)**

In 2016, the Fifth Circuit recognized that as long as a non-diverse party "remains joined, the only issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir.2016) ("*IEVM*"). Thus, were this court to determine that plaintiffs enjoy a viable cause of action against the non-diverse/diversity-destroying defendant, then the court would lack subject matter jurisdiction over the entire case, and remain unable to reach a merits-based Rule 12(b)(6) motion. *Id*. Alternatively, were the court to find that plaintiffs improperly joined the Commissioner of Insurance, then the court would be obliged to dismiss him, without prejudice, because it would lack jurisdiction over that defendant for purposes of an adjudication on the merits. *See IEVM, supra*.[5] In other words, no matter how the court resolves the improper joinder issue, the Rule 12(b)(6) motion must be denied.[6]

---

[4] More recently, plaintiffs filed a motion for oral argument on their motion to remand. [doc. # 19]. That motion is addressed via separate order.

[5] Somewhat paradoxically, the court often applies a 12(b)(6) standard to assess improper joinder. *See* discussion, *infra*.

[6] In *IEVM*, the Fifth Circuit vacated the district court's ruling granting a Rule 12(b)(6) motion in favor of the non-diverse defendant because the court did not have jurisdiction to do so. *IEVM*, 818 F.3d at 210. The court explained that when the district court determined that the non-

**II.   Motion To Remand**

    a)   <u>Removal and Improper Joinder Principles</u>

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). The removal statutes are strictly construed in favor of remand. *Manguno, supra*.

As recited earlier, NYLife invoked this court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiffs and defendants, 28 U.S.C. § 1332(a). It is manifest that plaintiffs' claims each exceed the jurisdictional minimum. *See* Petition, ¶ XII. Thus, the sole jurisdictional issue is whether the parties are completely diverse.

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). Again, removing defendant, NYLife, and plaintiffs are citizens of different states. However, some of the plaintiffs and

---

diverse defendant was improperly joined, the court effectively dismissed plaintiff's claims against the defendant without prejudice. *Id*. At that point, the district court should have denied the Rule 12(b)(6) motion, as moot. *Id*. In light of the undersigned's proposed disposition of plaintiffs' motion to remand, *see* discussion, *infra*, defendants' Rule 12(b)(6) motion is consigned to the same fate.

defendant, the Commissioner of Insurance, potentially share common Louisiana citizenship, or alternatively, plaintiff's official capacity claims against the Commissioner render him an arm of the state, and thus, a non-citizen for purposes of diversity.

To disregard the Commissioner of Insurance's citizenship (or lack of citizenship), NYLife must establish that he is but a nominal defendant/improperly joined. The improper joinder doctrine affords a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)). To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McDonal, supra* (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003)).

In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine whether removing defendant has demonstrated that plaintiffs have "no possibility of recovery" against the diversity-destroying defendant, *i.e.* that there is "no reasonable basis" for the district court to predict that plaintiffs might recover against him. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc). The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, *supra*. However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts

that would preclude plaintiff's recovery against the in-state defendant." *Id*.[7]

"[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *IEVM*, 818 F.3d at 207-208. Here, defendants contend that plaintiffs' complaint fails to state a claim against the Commissioner of Insurance. Accordingly, the court will employ a Rule 12(b)(6)- type analysis, which requires application of the federal pleading standard. *Id*.

      b)      Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To withstand challenge, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint,

---

[7] In other words, facts that can be easily disproved if not true. *Id.*

the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

On the other hand, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). In the end, however, plaintiff must "allege facts sufficient to state all the elements of h[is] claim." *Stone v. Louisiana Dep't of Revenue*, 590 Fed. Appx. 332, 339 (5th Cir.2014) (citations omitted).

    c)    <u>Plaintiffs' Allegations</u>

- The Commissioner of Insurance "was notified of the failure of NYLife," on March 15, 2017. New York Life "made misrepresentations regarding the purchase of 'whole life and/or universal life policies; that beginning in the early 1980's New York Life began to base the method of projecting interest and dividend rates of their life insurance policies on a higher rate of return based upon the market of the past few years rather than a rate previously used. It also began to offer new methods of paying premiums. Some of the purchasers of whole life policies selected the Premium Offset Proposal ("POP") whereby premiums would be paid by automatically deducting them from dividends earned under the policies." (Petition, ¶ XIII).

- The Commissioner of Insurance "has had notice of the failure of" New York Life "arising from the purchase of various life insurance policies from 1982 through 1994. During this period the marketing and sale of New York Life policies were conducted by approximately a thousand agents; [that] these agents sold about 101,109 policies to Louisiana residents, of which approximately 1,850 [were] encompassed within the class, [and] which was certified for a class action lawsuit. **Banks v. New York Life Insurance Company,** 737 So.2d 1275, 1278 (La. 1999)." *Id.*, ¶ XIV.

- The Commissioner of Insurance "has had notice of the failure of" New York Life and that "New York Life agents were trained by the home office and marketing materials came from the home office. During the class period, illustrations such as charts and explanatory brochures were available to assist agents in the sales presentations… Some policies were sold after numerous conversations and lengthy meetings while others were sold after group presentations at work sites and with very little interactions with premiums being paid through voluntary payroll deductions. **Banks v. New York Life Insurance Company,** 737 So.2d 1275, 1278 (La. 1999)." Id., ¶ XV.

- The Commissioner of Insurance "has notice that the petitioners' complaints originate from the allegation that New York Life, *as a corporate entity,* engaged in consumer fraud when it sold insurance policies to them, representing as a major benefit the policies' ability to build cash value, with the knowledge or likely knowledge that its premium offset proposal was not sufficient to pay all future premiums beyond a limited period as projected, and that the policyholders would eventually have to resume paying regular premiums. **Banks v. New York Life Insurance Company,** 737 So.2d 1275, 1278 (La. 1999)." *Id.*, ¶ XVI.

- The Commissioner of Insurance "'has not only had notice that underlying the petitioners' allegations of fraud, use of deceptive sale practices, and breach of its duty of good faith is the common complaint that the policies did not generate sufficient cash value to perform as represented, but also that the source of contention in this case is a corporate decision to market and sell policies which the corporation allegedly knew or should have known would not produce the benefits projected and that the causative link between New York Life's conduct and the petitioners' damages, costs incurred and penalties and attorney fees due. **Banks v. New York Life Insurance Company,** 737 So.2d 1275, 1278 (La. 1999)." *Id.*, ¶ XVII.

- The Louisiana Constitution established the Department of Insurance headed by the Commissioner of Insurance, who is to have powers and perform duties authorized by this constitution or provide by law;' that Title 22 of the Louisiana Revised Statutes, entitled "Unfair Trade Practices, provides a detailed enforcement

> mechanism by which the Commissioner of Insurance is empowered to investigate allegations of unfair methods of competition or unfair or deceptive acts in the insurance business, to hold hearings, to issue cease and desist orders, to assess monetary penalties against violators, and to suspend or revoke the license of violators and mandates the **COMMISSIONER OF INSURANCE** to protect these petitioners herein in accordance with Louisiana Revised Statute Annotated Articles 22:1212 *et seq*." *Id*., Prayer.

    d)    <u>Analysis</u>

At the outset, the court emphasizes that jurisdiction is assessed on the basis of claims in the state court complaint as it existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995). As the Fifth Circuit explained,

> [w]ithout such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.

*Id*. Consequently, the court cannot credit any post-removal attempts by plaintiffs, via memoranda, to amend their complaint to assert additional facts or claims against the Commissioner of Insurance.

Having properly limited the scope of the jurisdictional inquiry to the face of plaintiffs' complaint, it is manifest that plaintiffs do not state a claim for relief against the Commissioner of Insurance. The court observes that ¶¶ XIII-XVII of the complaint, which include the allegations against the Commissioner of Insurance, are copied almost verbatim from the Louisiana Supreme Court's decision (and the dissent) in *Banks v. New York Life Ins. Co.*, 737 So.2d 1275, 1283 (La. 1999). As detailed above, *Banks* focused upon a putative class action of NYLife policyholders who purchased insurance from 1982 through 1994. *Banks, supra*. Plaintiffs do not allege in their complaint that their father purchased his life insurance polices during the foregoing period.

Thus, there are no facts alleged to plausibly suggest that NYLife's failure to timely approve payment of the subject policies was related to the activities that formed the basis for the *Banks* suit.

Moreover, the complaint does not allege how the Commissioner of Insurance breached any duty owed the plaintiffs. While plaintiffs mention in their prayer for relief that the Commissioner of Insurance is empowered to examine and investigate insurance companies for unfair acts or deceptive practices, *see* Louisiana Revised Statutes §§ 22:1964 and 1967, plaintiffs do not set forth facts to show how they were harmed by the Commissioner's alleged failure to act. As plaintiffs acknowledged in their petition, the statutory scheme authorizes the Commissioner to issue a cease and desist order, and then, if the offending party fails to comply, issue a fine, or suspend/revoke the party's license. La. R.S. §§ 1967-1970.[8]

Here, plaintiffs alleged that the Commissioner was notified of NYLife's "failure" on, or about March 15, 2017. (Petition, ¶ XIII). Plaintiffs do not allege or even explain how a cease and desist order, fines, and/or suspension of NYLife's license – after their father already had passed away, thereby triggering coverage under the policies – would have obviated the harm that they presently assert, which, according to the petition, consists of NYLife's alleged failure to pay them sums due under the policies. *See* Petition. Indeed, they do not seek injunctive relief. Stated differently, plaintiffs do not set forth any facts to establish how any alleged failure of the Commissioner to exercise his authority to issue cease and desist orders was a cause-in-fact of

---

[8] The parties analyzed the vitality of plaintiffs' claims pursuant to Louisiana law. Therefore, the parties implicitly agree that the disputed state law issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

NYLife's alleged "failure" to pay them the proceeds under their father's life insurance polices.[9]

In sum, plaintiffs do not state a tort claim, or any other theory of recovery, against the Commissioner of Insurance.[10] Therefore, removing defendant has established that plaintiffs have no reasonable possibility of recovery against the Commissioner of Insurance, and consequently, his presence must be disregarded for purposes of subject matter and removal jurisdiction.

Under these circumstances, the court lacks subject matter jurisdiction to entertain the action against the Commissioner of Insurance, thus compelling his dismissal, without prejudice. *IEVM, supra*.[11] The remaining parties are completely diverse, with no forum-domiciled defendant. The court may exercise subject matter and removal jurisdiction. 28 U.S.C. §§ 1332 and 1441.

---

[9] Civil Code Article 2315 is the customary source for delictual liability under Louisiana law. To determine whether a plaintiff may recover on a negligence claim, Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:
> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*.

[10] Defendants further argue that the Commissioner is immune from suit pursuant to Louisiana Revised Statute § 9:2798.1. Having determined that plaintiffs do not state a claim for relief against the Commissioner, the court need not address that argument. In any event, this court recently declined to rely upon § 9:2798.1 at the motion to dismiss stage. *Bonin v. Ackal*, No. 17-0637, 2018 WL 522716, at *2 (W.D. La. Jan. 23, 2018) (James, J.).

[11] However, "[a]s the claim or claims against the nondiverse defendant must be dismissed without prejudice, the plaintiff is not barred by *res judicata* from refiling those claims in state court if he so desires." *IEVM*, 818 F.3d at 202 n.25.

e)	Other Grounds for Remand

Plaintiffs contend that NYLife waived its right to remove by filing an answer in state court prior to removal.[12] However, as the Fifth Circuit recently reemphasized, "[a] waiver of the right to remove must be clear and unequivocal; the right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits." *Strong v. Green Tree Servicing, L.L.C..*, ___ Fed. Appx. ___, 2017 WL 6333984 (5th Cir. Dec. 11, 2017 (citing *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003)). The filing of an answer does not constitute an adjudication on the merits. *See McAllister v. Stafford*, No. 14-0538, 2015 WL 13650758, at *2 (S.D. Miss. Jan. 6, 2015).[13]

Insofar as plaintiffs argue that removal was untimely, the court observes that a defendant must file a notice of removal, *inter alia*, within 30 days after the defendant receives, through service or otherwise, a copy of the initial pleading setting forth the claim for relief, or the summons, whichever period is shorter. 28 U.S.C. § 1446(b)(1). Here, NYLife was served with the petition, through the Louisiana Secretary of State, no earlier than October 20, 2017. *See* Notice of Removal, Exh. 5. NYLife timely removed the case to federal court less than 30 days later on November 13, 2017.

Plaintiffs also contend that this suit involves probate matters, and therefore the probate exception precludes this court's exercise of federal jurisdiction. *See e.g., Marshall v. Marshall*, 547 U.S. 293, 308–09, 126 S.Ct. 1735, 1746 (2006) (discussing probate exception). As here,

---

[12] Given that the Commissioner of Insurance was improperly joined, his limited pre-removal activity in state court proves irrelevant.

[13] In their memoranda, plaintiffs repeatedly emphasize that, by failing to timely respond to their requests for admission attached to their state court petition, NYLife admitted them. Even so, the court is not persuaded that the failure to respond to requests for admission constitutes a request for an adjudication on the merits sufficient to waive removal.

however, a suit that seeks to add assets to the decedent's estate does not interfere with the probate court's control over and administration of the estate, and does fall within the probate exception to federal jurisdiction. *See Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir.2008); *Marshall, supra*.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to remand [doc. # 7] filed by plaintiffs, the heirs of the estate of Jesse Clarence Brown, Sr., be DENIED

IT IS FURTHER RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 10] filed by defendant, Jim Donelon, in his capacity as Commissioner of Insurance, be DENIED.

IT IS FURTHER RECOMMENDED that plaintiffs' claims against Jim Donelon, in his capacity as Commissioner of Insurance, be DISMISSED, without prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 6th day of March 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE