# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| JESSE CLARENCE BROWN, JR. ESTATE, ET AL. | CIVIL ACTION NO. 17-1486 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| NEW YORK LIFE INSURANCE CO., ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 79] and Defendant New York Life Insurance Company's ("NY Life") Motion for Summary Judgment [Doc. No. 83]. Plaintiffs move the Court for partial summary judgment, contending that it is undisputed that the decedent, Jesse Clarence Brown, Sr., was the owner of three NY Life policies and that NY Life has acted in bad faith by failing to timely pay the amounts due to them under the policies. Therefore, Plaintiffs move the Court for attorney's fees and bad faith penalties.

NY Life moves the Court for dismissal of Plaintiffs' case in its entirety, contending that they failed to raise a genuine issue of material fact that NY Life had an obligation to Plaintiffs, that all their claims are time-barred, and that their fraud claims as to two of the policies are further barred by *res judicata*.

For the following reasons, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and NY Life's Motion for Summary Judgment is GRANTED.

### I. FACTS

Jesse Clarence Brown, Sr. ("Mr. Brown") purchased multiple life insurance

policies from NY Life. First, in 1978, Mr. Brown purchased a whole life NY Life Insurance Policy No. 36 661 185. Mr. Brown was to pay recurring premium payments for the remainder of his life, but NY Life's records do not indicate that he did so. Neither NY Life nor Plaintiffs have a copy of this policy.

Mr. Brown then purchased NY Life Policy No. 62 05 1294, dated November 2, 1984. Mr. Brown was to pay continuing premium payments until his death, but did not do so. As a result of the nonpayment of premium, Policy No. 62 05 1294 lapsed. According to NY Life records, this policy expired February 2, 1994.

Mr. Brown then purchased Policy No. 44 807 414 ("Policy 414"), dated February 18, 1993. Mr. Brown used the cash value of Policy No. 62 05 1294 to fund the purchase of Policy 414. Together with policy Nos. 36 661 185 and 62 05 1294 ("the Policies"), Mr. Brown was to pay recurring premium payments in connection with Policy 414 for the rest of his life.

Premium payments were made from 1993 through 2001.

> In July 1995, a group of life insurance policyholders filed a class action lawsuit against [NY Life] in New York state court [in *Willson v. New York Life Insurance Company, et al.*, Index No. 94/127804 (Sup. Ct. Ny. Co.)]. The allegations of the suit included claims that [NY Life] misled policyholders regarding the nature of their policy benefits. The class of plaintiffs was nationwide and included persons who had purchased certain [NY Life] life insurance policies between January 1, 1982 and December 31, 1994. In August 1995, the parties filed a proposed settlement of the dispute with class-members being afforded until October 31, 1995 to decide whether to participate in the settlement or to opt-out. The notice of the proposed settlement was mailed to policyholders nationwide, including Louisiana policyholders.

*McConathy v. Ungar*, 33,368 (La. App. 2 Cir. 8/23/00), 765 So. 2d 1214, 1215, *writ denied*, 2000-2678 (La. 11/17/00), 774 So. 2d 982; *see also* [Doc. No. 83-4, Exh. B, Affidavit of Robert Rosh ("Rosh Aff."), ¶¶ 3-19]. There were "nearly three million class members" that NY Life sent court-approved notice of the class action and post-settlement notice by first class mail. *See*

*Couvillon v. New York Life Ins. Co.*, No. CV 6:10-1468, 2012 WL 13054649, at *3 (W.D. La. Jan. 10, 2012). Additionally, notice of the *Willson* class action and settlement was published in numerous national and local newspapers, including The Wall Street Journal, USA Today, The New York Times, The Times Picayune and The Baton Rouge Advocate. *Id.* A toll-free telephone number was also established for class members, and this number was included in the notifications. [Doc. No. 83-4, Rosh Aff., ¶ 18].

Mr. Brown's Policy 62 05 1294 and Policy 414 are included in the *Willson* class period. Class notices were mailed to Mr. Brown on September 26, 1995, and September 26, 1996, for Policy No. 62 05 1294 and for Policy 414. The notices sent to Mr. Brown were not returned as undeliverable or undelivered. Mr. Brown did not opt-out of the *Willson* class action. [Doc. No. 83-6, Exh. C, Affidavit of Kevin Welton, ¶¶ 4-5].

The *Willson* settlement was approved by the presiding court and resulted in the release of all claims of class members that were or could have been asserted in the lawsuit and further enjoined all class members from prosecuting claims in any forum against NY Life based on the released claims.

On May 27, 1997, Mr. Brown took out a cash loan in the amount of $5,300 on the cash value of Policy 414, which NY Life paid to Mr. Brown by check.

On March 27, 1998, Mr. Brown took out a second cash loan in the amount of $7,164.00, which NY Life paid to Mr. Brown by check. Between the period of May 27, 1997, and April 24, 2001, funds were loaned on the cash value of Policy 414 towards satisfaction of premium payment obligations. Mr. Brown did not pay into Policy 414 additional funds (beyond premium payments) sufficient to offset the interest accruing on his various loans. As a result, the cash value of the policy was offset by the loan interest.

The last premium payment was received by NY Life on or about April 24, 2001, and it

was paid by paid-up additions.

Policy 414 provides that "[i]f a premium is not paid by the end of the grace period, this policy will lapse. All insurance will end at the time of the lapse, if the policy has no cash value and no dividend values. If the policy has cash value or dividend values, insurance can be continued only as stated in Options 1 or 2 of the Options Upon Lapse provision, but any insurance or benefits from riders or dividends will end at the time of the lapse." [Doc. No. 83-3, Bates No. MSJ0079, attached to Exh. A, Affidavit of Laura Matyja ("Matyja Aff.")]. Policy 414 lapsed on June 19, 2001. On that date, NY Life transmitted a notice to Mr. Brown and to his assignee, Tensas State Bank. The notice provided:

> When you purchased your New York life policy in 1993, you enjoyed the benefit of knowing that you made a wise decision for your future. Because we realize how important this life insurance coverage is to you, we are concerned about the current status of your policy.
>
> Our records show that your current premium of $2,020.50, due May 18, 2001, remains unpaid. Unfortunately, this unpaid premium has caused your policy to lapse. You may reinstate your valuable coverage by mailing the past due premium, along with the remittance form at the bottom of this page, in the enclosed return envelope, by July 19, 2001. We will be glad to reinstate your policy and continue your insurance coverage, provided all persons covered under the policy are living when payment is received. To reinstate your policy after this date, you would have to meet certain requirements for evidence of insurability.
>
> If your policy had any cash value or dividend values at the time of the lapse, limited coverage will continue under the "Non-Forfeiture Benefit" or "Options Upon Lapse" terms of your policy. Please disregard this notice if your premium payment has already been made.

[Doc. No. 83-3, Exh. A, Matyja Aff., ¶15; Bates No. MSJ 0035-0040].

Upon lapse, NY Life purchased extended term insurance for Mr. Brown's benefit with the remaining $914.16 cash value of Policy 414. The extended term expired on July 15, 2001.

On August 22, 2001, a second notice was sent which advised that the policy's net cash

value of $914.16 had been applied to purchase extended term insurance, but that the extended term insurance had expired.

Mr. Brown died on October 6, 2016. By the time of his death, NY Life had no record of receipt of any premium payments for more than fifteen years and no record of any existing, active policies.

Following Mr. Brown's death, his children requested payment of the life insurance proceeds. After reviewing its records, NY Life denied the claims and has not issued payments to Mr. Brown's alleged beneficiaries.

On October 6, 2017, Plaintiffs, the children of Mr. Brown, filed a Petition for Damages from Breach of Contract and Fraud and for Unfair and Deceptive Insurance Practices ("Petition") in the Sixth Judicial District Court for the Parish of Tensas in the State of Louisiana under Docket No. 24056.

On November 3, 2017, NY Life filed an Answer, asserting as one of its defenses that the underlying policies were terminated prior to Mr. Brown's death.

On November 13, 2017, NY Life removed the case to this Court, alleging that removal was proper because the Louisiana State Commissioner of Insurance had been improperly joined.[1]

After removal, the parties filed various motions. On April 4, 2018, the Court issued a

---

[1] Plaintiffs make much of the fact that this removal was "flawed" and argues that NY Life made "admissions" by failing to appear in state court proceedings **after** the case was removed to this Court. The flaw to which Plaintiffs refer was NY Life's failure to specify whether it was a corporation, a limited liability company, or some other type of unincorporated association. On February 27, 2018, NY Life amended its notice of removal to reassert that it was a mutual insurance company, organized under the laws of the State of New York, and that it is treated as a New York corporation. The clarification was necessary to confirm the Court's subject-matter jurisdiction over this diversity action, but has no import to Plaintiffs' arguments otherwise. Additionally, once the case was removed, no further action should have taken place in state court. Likewise, any action unknowingly taken by the state court following removal has no effect on the parties to this proceeding.

Judgment [Doc. No. 35] adopting the Report and Recommendation of the Magistrate Judge and denying Plaintiff's Motion to Remand, as well as NY Life's Motion to Dismiss. However, the Court also dismissed without prejudice any claims against Jim Donelon, in his capacity as Commissioner of Insurance.

After further extensive motion practice, on April 4, 2019, Plaintiffs filed the instant Motion for Partial Summary Judgment. On April 11, 2019, NY Life filed the instant Motion for Summary Judgment. The motions are fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* at 398 (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).

### B. Analysis

#### 1. Breach of Contract

First, Plaintiffs assert a breach of contract action against NY Life, contending that it has failed to pay the life insurance proceeds due to Mr. Brown's beneficiaries under the Policies and that the denial of the claim is in bad faith. Plaintiffs move for partial summary judgment that NY Life's denial violated its duty of good faith and fair dealing under LA. REV. STAT. 22:1973.[2]

---

[2] Plaintiffs cite a number of Louisiana statutory provisions in support of their claims. First, Plaintiffs cite to LA. REV. STAT. 22:657-658, which address reinsurance agreements. The Court assumes that Plaintiffs refer to the former LA. REV. STAT. 657-658, which are now codified at LA. REV. STAT. 22:1891-1892. However, even these statutes are inapposite. Section 1892 provides for bad faith damages for "policies other than life." LA. REV. STAT. 22:1892. Likewise, Plaintiffs' references to LA. REV. STAT. 22:1212 and 1214 are inapposite because those address health and accident coverage. Therefore, the Court has disregarded these

Specifically, Plaintiffs seek bad faith penalties as a matter of law pursuant to LA. REV. STAT. 22:1973(B)(5), which provides that an insurer breaches its duty of good faith and fair dealing when it fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." Louisiana Revised Statute 22:1973(C) provides for penalties "assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."; *see also Henderson v. State Farm Mut.*, 51,567 (La. App. 2 Cir. 8/9/17), 244 So. 3d 576, 579 ("Both La. R.S. 22:1892(B)(1) and La. R.S. 22:1973(B)(5) and (C) provide for penalties, including attorney fees, against an insurer whose failure to pay a claim after receiving satisfactory proof of loss is found to be arbitrary, capricious, or without probable cause.").

NY Life moves for summary judgment and opposed Plaintiffs' Motion for Partial Summary Judgment, arguing that Plaintiffs have failed to produce evidence that there are any Policies upon which payment is due and that any such claims are untimely.

As a federal court is sitting in diversity, the Court applies the substantive law of Louisiana, the forum state. *See, e.g., Holt v. State Farm Fire & Cas.* Co., 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Under Louisiana law, to prevail on a valid claim for breach of contract, the plaintiff must prove "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."

---

references. Finally, Plaintiffs cite to LA. REV. STAT. 22:1220, but that statute is now codified at LA. REV. STAT. 22:1973.

8

*Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011).

The duty of good faith and fair dealing does not exist absent a contract. *Spillway Inv., L.L.C. v. Pilot Travel Centers L.L.C.*, No. Civ. A. 04-2451, 2005 WL 517498, at *7 (E.D. La. Feb. 22, 2005) ("Louisiana recognizes an implied covenant of good faith and fair dealing in every contract.... Conversely, where no enforceable contract exists, no covenant of good faith and fair dealing can be implied.") (internal citations omitted).

In this case, there is no doubt that Mr. Brown purchased the Policies from NY Life, and, if he had met his obligations under those Policies, NY Life would have had the obligation to perform by paying life insurance proceeds to his beneficiaries. However, NY Life has presented undisputed and proper summary judgment evidence through the affidavits and the accompanying business records that show the Policies had all lapsed well before Mr. Brown's 2016 death and that the cash value had been used for loans to Mr. Brown, to pay premiums, and on interest.

Although Plaintiffs have attempted to raise a genuine issue of material fact for trial that their father continued to pay the premiums and/or that there was remaining cash value to the Policies, they have failed to do so. First, their belief, like conjecture and speculation, cannot serve to raise a genuine issue of material fact for trial.

Second, Plaintiffs' reliance on the testimony of Skip Hawkins ("Hawkins") of Tensas State Bank is misplaced. Hawkins offered testimony on the general practices of the bank and, to some extent, of Mr. Brown. He testified that Tensas State Bank did not make premium payments as an assignee, but it "would not be unusual" for the bank to deduct premium payments from an account holder. [Doc. No. 83-16, Exh. G at Bates No. MSJ0898, transcript pp. 67-68]. Nevertheless, Hawkins did not have any personal memory of payments drafted or

9

otherwise made by Mr. Brown to NY Life. The only records of draft payments from Mr. Brown to NY Life dated back to 1993-1996 and were credited by NY Life. Thus, Hawkins' testimony is not inconsistent with the evidence produced by NY Life and does not raise a genuine issue of material fact for trial.[3]

Finally, to the extent that Plaintiffs would seek to rely on statements by Mr. Brown at trial, such statements are clearly inadmissible hearsay. There is no admissible evidence to show that Mr. Brown made premium payments after April 2001, more than fifteen years prior to his death, or that there was remaining cash value to any life insurance policy. Thus, Plaintiffs have failed to raise a genuine issue of material fact for trial that NY Life had an obligation to pay their claim. According, NY Life is entitled to summary judgment on Plaintiffs' breach of contract claims, and Plaintiffs' Motion for Partial Summary Judgment must be denied.

**2. Fraud and Deceptive Practices**

Plaintiffs also assert claims against NY Life of fraud and deceptive practices. NY Life moves for summary judgment on these claims as well

Pursuant to Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *Ballard's Inc. v. N. Am. Land Development Corp.*, 677 So.2d 648, 650 (La. App. 2d Cir. 1996); *see also* LA. CIV. CODE ART. 1953. The elements of a Louisiana delictual fraud or intentional misrepresentation claim are (1) a misrepresentation of a material

---

[3]Plaintiffs seem to question Mr. Brown's indebtedness and the fact that he took out loans against the cash value of the Policies. While Hawkins certainly characterized Mr. Brown as a good customer of Tensas State Bank, he also testified that Mr. Brown remained in debt until approximately five years before his death. Therefore, Hawkins' testimony certainly does not raise a genuine issue of material fact for trial as to the credibility of NY Life's records.

fact; (2) made with the intent to deceive; and (3) justifiable reliance thereon with resultant injury. *Guidry v. United States Tobacco*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted). Fraud may also result from silence or inaction. LA. CIV. CODE ART.1953; *Ballard's*, 677 So.2d at 650.

First, as NY Life points out, it is not precisely clear what misrepresentations were allegedly made or what information it failed to disclose to Mr. Brown. However, even if the Court were to disregard this lack of clarity, Plaintiffs have failed to raise a genuine issue of material fact for trial for two reasons: (1) such claims are time barred as to all Policies, and (2) such claims are barred by *res judicata* at least as to the two more recent policies.

Fraud claims are generally subject to a one-year prescriptive period for tort or delictual actions. *See* LA. CIV. CODE ART. 3492. If there is a breach of a fiduciary duty, then such claims are subject to a ten-year prescriptive period. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 478 (5th Cir. 2002).

In discovery responses, Plaintiffs assert that NY Life portrayed "life insurance policies as investment, savings or retirement plans without disclosing the true nature of the policies carrying out the replacement of existing life insurance policies with new policies or funding new policies in whole or part by using an existing policy's cash value in order to obtain premiums and sales commissions from the insured. . . ." [Doc. No. 71-4, p. 15]. Given these allegations, it would appear that the one-year prescriptive period applies. However, even if the Court were to infer a fiduciary duty because of the nature of the relationship, any such failures to disclose would have occurred more than ten years ago as to all Policies. At best, if Plaintiffs contend that there were on-going fraudulent practices or failures to disclose, the last admissible evidence of any communication from NY Life took place in 2001, more than fifteen years before Mr. Brown's

death. Accordingly, Plaintiffs' fraud claims are time barred, and NY Life is entitled to summary judgment on this basis alone.

Additionally, even if there were no time bar, such allegations with regard to Policy 414 and Policy No. 62 05 1294 would fall into the type of claims raised in the *Willson* class action. While Plaintiffs are adamant that Mr. Brown was not a party to that lawsuit, there is absolutely no evidence to dispute the reasonableness of the notice provided or that he failed to opt out of the class. Therefore, he is a class member as defined by *Willson* to include "those persons or entities (1) who have or had an ownership interest in one or more whole life or universal life insurance policies issued by NYL from January 1, 1982 through December 31, 1994, and (2) who did not timely request exclusion from the class." [Doc. No. 83-5, Bates No. MJ0327-28].

The Louisiana Supreme Court has ruled that "[t]he purpose and intent of class action procedure is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to the representatives who bring the action, but to all others who are 'similarly situated'. . . ." *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913 (La. 9/9/97), 703 So. 2d 542, 544, on reh'g in part, 96-2913 (La. 10/10/97), 710 So. 2d 235. "La. Code Civ. Proc. art. 597 provides that any judgment rendered in a class action suit is conclusive as to all class members, whether joined as parties or not." *Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 2014-1708 (La. 10/14/15), 180 So. 3d 266, 269 (citing *Duckworth v. Louisiana Farm Bureau Mut. Ins. Co.*, 11–2835 (La.11/2/12), 125 So.3d 1057, 1069).

The Louisiana Supreme Court has set forth five prerequisites for a finding of *res judicata* under LA. REV. STAT. 13:4231: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the

12

time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Oliver v. Orleans Par. Sch. Bd.*, 2014-0329 (La. 10/31/14), 156 So.3d 596, 612 (citing *Burgeuieres v. Pollingue*, 02-1385 (La 2/25/03, 843 So.2d 1049, 1052, 1053)). The *Oliver* court further clarified that "[b]oth a dismissal with prejudice and a settlement are 'final' adjudications for the purposes of *res judicata*." *Id.* at 612 (citing *Ortega v. State, Dep't. of Transp. and Dev.*, 96–1322 (La. 2/25/97), 689 So.2d 1358, 1363).

NY Life has presented sufficient evidence to show that all five elements are met. The *Willson* Judgment confirming the settlement is a valid final judgment based on the merits, satisfying the first two elements. The evidence shows that notice reasonably calculated to reach Mr. Brown was sent, and he did not opt out of the class, satisfying the third element. Further, the *Willson* court released and enjoined any claims relating to representations made during the marketing, solicitation, and/or sale of the subject policies regarding whether the policies would operate or could function as an investment plan, the rate of return on premiums paid and illustrations of dividend values, cash values or death benefits. [Doc. No. 83-4 Exh. B, Rosh Aff., ¶ 22; Doc. No. 83-4, Bates No. MSJ099, 107-157; Doc. No. 83-5, Bates No. MSJ0267-0331]. Because Plaintiffs' claims arise from alleged fraud and failures to disclose in connection with the sale, administration, servicing, and performance of Policy 414 and Policy No. 62 05 1294, which are within the Class Period, the *Willson* Judgment bars such claims as a matter of law. Thus, for this additional reason, NY Life is entitled to summary judgment on the fraud claims with regard to Policy 414 and Policy 62 05 1294.

### III.    CONCLUSION

For the foregoing reasons, NY Life's Motion for Summary Judgment is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE. Plaintiffs' Motion for Partial Summary Judgment is DENIED.

**MONROE, LOUISIANA**, this 28th day of May, 2019.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**